IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | Crim. No.   19-21 |
| JASMINE PARRISH | |

**GOVERNMENT'S SENTENCING MEMORANDUM**

AND NOW comes the United States of America, by its attorneys, Stephen R. Kaufman, Acting United States Attorney for the Western District of Pennsylvania, and Rebecca L. Silinski, Assistant United States Attorney for said district and submits this Sentencing Memorandum to the Court:

## I.     INTRODUCTION

The defendant, Jasmine Parrish, is scheduled to be sentenced on May 7, 2021, before this Honorable Court.  Ms. Parrish has been convicted of multiple counts of armed, unarmed, and attempted bank robbery, which are all crimes of violence that indicate that Ms. Parrish was willing to use force to secure something that was not rightfully hers – in this case, a substantial amount of U.S. currency.  These bank robberies, additionally, were elaborate and planned out, showing a heighted impetus for committing the crimes.  The government recommends that the Court sentence Ms. Parrish within the Guideline Range of 70-87 months.

## II.    THE SENTENCING GUIDELINES RANGE

The United States Supreme Court has instructed that "district courts must begin their [sentencing] analysis with the Guidelines and remain cognizant of them throughout the sentencing process."  *Peugh v. United States*, 133 S.Ct. 2072, 2083 (2013) (quoting *Gall v. United States*, 522 U.S. 38, 49 (2007)).  Sentencing decisions are to be "anchored by the Guidelines," and appellate

1

courts may presume that guideline sentences are reasonable. *Peugh*, 133 S.Ct. at 2083. When considering a sentence outside of the Guideline Range, the Court "must consider the extent of the deviation and ensure that the justification ***is sufficiently compelling*** to support the degree of the variance." *Id*. (citing *Gall*, 522 U.S. at 50) (emphasis added). "For even though the Guidelines are advisory rather than mandatory, they are . . . the product of careful study based on extensive empirical evidence derived from the review of thousands of individual sentencing decisions." *Gall*, 522 U.S. at 47 (citing *Rita v. United States*, 551 U.S. 338, 349 (2007)).

In this case, the United States Probation Office has calculated the defendant's sentencing guidelines range, with a criminal history category of I, to be 70-87 months' imprisonment. *See* Doc. No. 94, ¶ 107.

### III.   SECTION 3553 FACTORS

The factors cited under Title 18, United States Code, Section 3553 support the Government's recommendation that Ms. Parrish be sentenced within the Guideline Range in this case, as set forth herein.

**A.   18 U.S.C. § 3553(a)(1) – The Nature and Circumstances of the Offenses and the History and Characteristics of the Defendant**

*1.   Nature and Circumstances of the Offenses*

On February 4, 2020, Ms. Parrish entered a plea of guilty to all five (5) counts of the Superseding Indictment, pursuant to a written plea agreement with the United States. *See* Doc. No. 83-1. In conjunction with her change of plea, Ms. Parrish admitted her conduct, which is more fully stated in the final Presentence Investigation Report (PSR), but for ease of reference, the government sets forth herein:

**ARMED BANK ROBBERY – WEST MIFFLIN, PA (COUNT TWO)**

On June 23, 2018, the PNC Bank located at 451 Clairton Boulevard, Pittsburgh, Pennsylvania, was robbed of $61,124.00, by two females later

identified as POREMSKI and PARRISH, brandishing what appeared to be a handgun and threatening to utilize a bomb.

At approximately 3:00 p.m., PARRISH and POREMSKI entered the bank, both dressed in all black traditional Middle Eastern clothing to include hijabs. As a part of their disguise and/or to assist in the commission of the bank robbery, POREMSKI was observed pulling a roller suitcase and PARRISH was observed carrying a cane and wore a surgical mask over her face with a tube running down to an oxygen tank.

PARRISH and POREMSKI approached the teller counter and passed a note indicating they were robbing the bank and that they had a bomb. PARRISH and POREMSKI directed the tellers to empty their drawers, they walked all the bank employees to the vault area where POREMSKI produced what appeared to be a handgun and had the employees get into the vault. Once inside, POREMSKI was observed directing the employees to remove the cash from the vault and place it into the black suitcase. While this was occurring, PARRISH stationed herself outside the vault where she could observe the lobby. Once the suitcase was full, both women exited the bank on foot.

Law enforcement observed on surveillance footage POREMSKI's vehicle pulling out of the bank parking lot approximately 30 seconds after the bank robbery occurred.

The Government indicated that the firearm was determined to be a BB gun.

**ARMED BANK ROBBERY – MCCANDLESS, PA (COUNT THREE)**

On September 6, 2018, the PNC Bank located at 9805 McKnight Road, Pittsburgh, Pennsylvania, was robbed of $35,500.00 by two females, later identified as POREMSKI and PARRISH, utilizing what appeared to be a firearm.

POREMSKI and PARRISH wore disguises to conceal their identities. POREMSKI had black hair or wore a black wig, a black t-shirt, gray sweatpants, and carried a pink/white/purple tote bag. PARRISH wore a red/black afro with long nails and bright, red lipstick.

At approximately 5:00 p.m., POREMSKI entered the bank, approached the teller counter, and placed a note on the counter indicating she was robbing the bank and did not want to hurt anyone. As one of the tellers began to remove money from the vault, POREMSKI produced what appeared to be a black handgun and told the teller she wanted money from the vault. POREMSKI then ordered all of the employees into the vault and, once inside, provided the employees with a bag to fill. After the bag was filled with money from the vault, POREMSKI fled from the bank on foot.

A bank employee described the gun, which he observed while in the vault, as a 9-millimeter and that the gun appeared real. Another bank employee also described the gun as a "black, semi-automatic 9-millimeter looking pistol."

The Government has indicated that the firearm was later determined to be a BB gun.

One of the bank tellers stated that prior to the robbery a black female (PARRISH) entered the bank and asked for change, which she thought was strange. Law enforcement obtained surveillance footage and observed PARRISH entering the bank prior to the robbery, going to the teller counter and then leaving the bank. As she was walking toward the exit, PARRISH passed POREMSKI and appeared to give her a nod.

Another bank employee observed a white, four-door SUV operated by a black female driving through the bank plaza parking lot shortly after POREMSKI had exited the bank. This vehicle matches the description of POREMSKI's white SUV.

### BANK ROBBERY – PENN HILLS, PA (COUNT FOUR)

On October 18, 2018, the PNC Bank located at 206 Rodi Road, Pittsburgh, Pennsylvania, was robbed of $380.00 by a white female, later identified as POREMSKI.

PARRISH is observed on surveillance video, just prior to POREMSKI entering the bank to rob it, making change with one of the tellers. PARRISH then leaves the bank.

At approximately 6:15 p.m., POREMSKI entered the bank, approached the teller counter, and ordered bank employees to get into the vault. One of the tellers advised POREMSKI the vault was closed and locked for the day, to which POREMSKI responded that she wanted all of the money from the teller register. POREMSKI threatened having a gun but never displayed one, was given cash in the amount of $380.00 from the teller register and fled from the bank on foot.

### ATTEMPTED BANK ROBBERY – BLOOMFIELD, PA

An attempted bank robbery occurred, on November 21, 2018, at the PNC Bank located at 4761 Liberty Avenue, Pittsburgh, Pennsylvania, which is the bank that PARRISH used to work at, by a younger black female, later identified as a minor-relative of PARRISH.

4

> The minor entered the bank, requested to speak with a specific teller by name, and proceeded to hand the teller a demand note, which stated:
>
>> "DONT MAKE A SCENE B____,[1] I HAVE A BOMB ON THAT N____!!! SO IF YOU PRESS THAT BUTTON YOU AND EVERYONE Y'ALL ALL KNOW WILL DIE!!! I HAVE THIS PLANNED OUT Y'ALL WILL DIE BEFORE THE COPS GET THERE!!! IT'S Y'ALL FAULT I LOST MY WIFES HOUSE, IM WATCHING AND HEARING EVERYTHING SO NO FUNNY BUSINESS OR THAT N____'S MOTHER DIE FIRST.
>>
>> 'VETERAN OF AMERICA'"
>
> The teller was able to talk the minor down and the minor exited the bank before obtaining any money. The minor was later apprehended and, at that time, determined to be a juvenile.
>
> The Government's evidence would also include statements of witnesses, employment records, showing that both PARRISH and POREMSKI worked together in the home health care industry as well as that PARRISH was formerly employed at the Liberty Avenue PNC bank.
>
> Law enforcement also confirmed that POREMSKI drove a white, older model SUV and a white, older model sedan (which was parked outside of POREMSKI's house) at the time of her arrest, consistent with the vehicles observed on surveillance footage of the bank robberies.
>
> At the time of her arrest, PARRISH signed an advice of rights form and waived her rights. PARRISH admitted to her involvement in the bank robberies and that she and POREMSKI coordinated obtaining their disguises for the robberies.

Doc. No. 94, ¶¶ 8-28.

### 2. *History and Characteristics of the Defendant*

Ms. Parrish is 31 years old and a lifelong residence of Pittsburgh, PA. *See* Doc. No. 94, ¶ 86. She reported being raised by her mother and grandparents, that her emotional and physical needs were always met and that she did not experience abuse or neglect as a child. *Id.* at ¶ 87. She

---

1. Redactions do not appear in the original demand note and are not contained in the final Presentence Investigation Report, the government has removed them for the purposes of this public document.

dropped out of high school, has not obtained her high school diploma or GED.  *Id.* at. ¶¶ 96-97.  Also, Ms. Parrish self-reported a history of marijuana abuse and a history of mental health concerns, including "homicidal and suicidal ideations."  Doc. No. 94, ¶ 93.

Unlike many defendants that come before this court, Ms. Parrish does not have a criminal history.  The government recognizes that ordinarily this factor weighs in favor of any request by the defendant for a more lenient sentence.  However, Ms. Parrish's first encounter with the law is for substantial, violent crimes – conspiring to commit bank robbery, committing armed bank robbery, committing unarmed bank robbery and an attempted bank robbery.

Ms. Parrish also, unlike many defendants that come before this court, reported a track-record of employment, dating back to 2011, in the home health care industry.  She also worked at PNC Bank (Bloomfield), the victim bank at Count Five, and Rite Aid.  *Id.* at ¶¶ 99-102.

**B.    18 U.S.C. § 3553(a)(2)(A) – The Need for the Sentence Imposed To Reflect The Seriousness Of The Offenses, To Promote Respect For The Law And To Provide Just Punishment For The Offenses**

Imposition of a sentence within the advisory Guidelines Range is necessary in this case to reflect the seriousness of the offenses, to promote respect for the law, and to provide just punishment for the offenses.  As described more fully above, Ms. Parrish's offenses are very serious.  The Guideline Range adequately and accurately reflects her conduct. Thus, a within Guidelines Range sentence in this case will satisfy these sentencing factors.

**C.    18 U.S.C. § 3553(a)(2)(B) – The Need for the Sentence Imposed to Afford Adequate Deterrence to Criminal Conduct**

Imposition of a sentence of imprisonment within the Guidelines Range addresses both specific deterrence – as to Ms. Parrish – and general deterrence – to those who may consider committing similar offenses, signaling that those who commit similar crimes will also face substantial sentences.

**D.    18 U.S.C. § 3553(a)(2)(C), (D) – The Need for the Sentence Imposed to Protect the Public from Further Crimes of the Defendant and to Provide the Defendant with Needed Educational or Vocational Training, Medical Care, or Other Correctional Treatment in the Most Effective Manner**

A sentence within the Guideline Range will protect the public from further crimes of Ms. Parrish and give her the opportunity to obtain education and/or or vocational training as well as treatment related to any mental health concerns as well as drug abuse.

**E.    18 U.S.C. § 3553(a)(3), (4) – The Kinds of Sentence and the Sentencing Range Established by the Applicable Category of Offenses Committed by the Applicable Category of Defendant as Set Forth in the Guidelines**

As set forth in the PSIR, regarding a term of imprisonment, Ms. Parrish is subject to the following statutory and guideline provisions:

> **Statutory Provisions:** Count 1: The maximum term of imprisonment is five years. 18 U.S.C. § 371. Counts 2&3: The maximum term of imprisonment is 25 years per count. 18 U.S.C. § 2 and 18 U.S.C. § 2113(d). Counts 4 and 5: The maximum term of imprisonment is 20 years per count. 18 U.S.C. § 2 and 18 U.S.C. § 2113(a).
>
> **Guideline Provisions:** Based upon a total offense level of 27 and a criminal history category of I, the guideline imprisonment range is 70 months to 87 months.

Regarding a term of supervised release, Ms. Parrish is subject to the following statutory and guideline provisions:

7

**Statutory Provisions:** Count 1: The Court may impose a term of supervised release of not more than three years. 18 U.S.C. § 3583(b)(2). Counts 2&3: The Court may impose a term of supervised release of not more than five years per count. 18 U.S.C. § 3583(b)(1). Counts 4&5: The Court may impose a term of supervised release of not more than three years per count. 18 U.S.C. § 3583(b)(2).

Multiple terms of supervised release shall run concurrently. 18 U.S.C. § 3624(e).

**Guideline Provisions:** Count 1: Since the offense is a Class D Felony, the guideline range for a term of supervised release is 1 year to 3 years. USSG §5D1.2(a)(2). Counts 2&3: Since the offenses are Class B Felonies, the guideline range for a term of supervised release is 2 years to 5 years per count. USSG §5D1.2(a)(1). Counts 4&5: Since the offenses are Class C Felonies, the guideline range for a term of supervised release is 1 year to 3 years per count. USSG §5D1.2(a)(2).

**F.      18 U.S.C. § 3553(a)(5) – Any Pertinent Policy Statement**

There are no pertinent policy statements applicable.

**G.      18 U.S.C. § 3553(a)(6) – The Need to Avoid Unwarranted Sentence Disparities Among Defendants with Similar Records Who Have Been Found Guilty of Similar Conduct**

A sentence within the advisory Guidelines Range reflects an appropriate sentence for the defendant in this case and, falling within the guideline range, would not result in an *unwarranted* sentencing disparity.

**H.      18 U.S.C. § 3553(a)(7) – The Need To Provide Restitution To Any Victims Of The Offenses**

Restitution is applicable in this case for the amount of money that was taken from the victims of each robbery, as follows: West Mifflin PNC Bank - $61,124; McCandless PNC Bank - $35,500; and, Penn Hills PNC Bank - $380.00. *See* Doc. No. 94, ¶¶ 31-33.

## IV. CONCLUSION

For the reasons set forth herein, the government respectfully requests that court sentence Ms. Parrish to a term of imprisonment within the Guideline Range and sentence her to a term of supervised release of 3 years as to Counts One, Four and Five and 5 years at Counts Two and Three, to run concurrently.

    Respectfully submitted,

    STEPHEN R. KAUFMAN
    Acting United States Attorney

By:   */s/ Rebecca L. Silinski*
    REBECCA L. SILINSKI
    Assistant United States Attorney
    PA ID No. 320774